334

## WISCONSIN MYSTIC ICELESS REFRIGERATOR, INC. v. MINNESOTA MYSTIC ICELESS REFRIGERATOR, INC. AND OTHERS.[1]

May 9, 1930.

No. 27,796.

*Cobb, Hoke, Benson, Krause & Faegre,* for appellant.
*Jay W. Smith* and *T. M. Thomson,* for respondent.

DIBELL, J.

Action to recover of the defendants the price paid upon the purchase of the right to manufacture and sell a so-called iceless refrigerator in Wisconsin. There was judgment for $2,233.61 against the defendant C. B. March, the only defendant served, and he appeals.

[1]Reported in 230 N. W. 796.

■ The plaintiff, Wisconsin Mystic Iceless Refrigerator, Inc., is a Minnesota corporation. The defendant Minnesota Mystic Iceless Refrigerator, Inc. is incorporated under the laws of Montana. The defendants March, Elliott, and Dosse are its directors and stockholders. March is its vice president. The defendant Mystic Iceless Refrigerator, Inc. is incorporated under the laws of Washington and is referred to as the parent company.

The plaintiff Wisconsin company was in process of organization in April, 1928. Its promoters, later its officers, assuming to act as trustees for the corporation in process of organization, purchased for $15,000 the right to manufacture and sell the Mystic iceless refrigerator in Wisconsin. A contract was made on April 23, 1928, between the Wisconsin company and the Mystic company of Washington, and on May 5, 1928, between the promoters of the plaintiff company and the Minnesota company, which secured to the plaintiff when incorporated the right to manufacture and sell the refrigerators in Wisconsin. Upon its incorporation the plaintiff ratified the contract. In April the plaintiff's promoters deposited with a Minneapolis bank, in escrow, $5,000, to await the coming of the contract from the Mystic company of Washington and agreed to pay $10,000 upon its receipt. On May 7 the incorporators deposited in a Minneapolis bank $10,000 for the credit of the defendant Minnesota company as the final payment. Dosse, the president and manager of the Minnesota company, was demonstrating the value of the refrigerator and was endeavoring to sell the Wisconsin rights.

The court found that he "represented that said Mystic iceless refrigerator was made out of a plaster compound containing a secret powder and that the powder made it function; that it operated successfully without ice or other cooling devices or materials; that it would preserve foods in the warmest kind of weather; and that it functioned perfectly in warm weather."

Defendant March, the vice president of the Minnesota company, was known to some of the promoters of the plaintiff company and seems to have been a man of standing. His connection with the

company influenced them in purchasing. He was in Minneapolis at the time Dosse made the representations found by the court and at the time of the execution of the April agreement. He was not so active in negotiating the sale as was Dosse and does not appear to have been present at the time that Dosse's representations found by the court were made. He was interested in the same refrigerator in Montana. He gave a glowing description of the device which was to be sold and prophesied large profits. He and Dosse were co-operating in making the sale. His relation to Dosse and what he said and did in furtherance of the sale were such as to make him responsible for the misrepresentations of Dosse.

The refrigerator was represented with positiveness to be a workable and working cooling device. There was evidence that when the weather was dry it worked. In humid weather it did not. Its workability depended upon processes of evaporation not necessary to be described. As a practical or commercial proposition it was a hopeless failure. The representations of its workability were false and of course were made to induce action.

On May 7, 1928, the promoters paid into the bank $10,000 in cash as the final payment. It seems that it must then have been known by the Minnesota company that the refrigerator was a failure. On May 9 the $10,000 was paid to five officers of the Minnesota company, and March got one-fifth.

Soon after its incorporation the plaintiff ascertained the facts and seasonably rescinded and demanded back the money paid. Upon the facts stated there is no question upon the sufficiency of the evidence to sustain a finding of fraud justifying rescission. 1, 5 & 6 Dunnell, Minn. Dig. (2 ed.) §§ 1815, 8605, 10088, 10097. No complaint is made because March was not technically the vendor. He was perhaps content to respond to the extent of $2,000 if found liable at all. The case was not tried upon the theory that there could not be a recovery against him by way of rescission because he was only a stockholder and officer.

■ There was a statement in the April contract between the Mystic company of Washington and the Wisconsin company that

the purchaser had tested and examined the refrigerator and was satisfied with the results and was not relying upon any warranties or statements or representations made by the Mystic company.

There was nothing in this statement to prevent a rescission and recovery of the money paid upon the purchase. If of any applicability the case is not so strong for the defendant as Edward Thompson Co. v. Schroeder, 131 Minn. 125, 154 N. W. 792; Ganley Bros. Inc. v. Butler Bros. Bldg. Co. 170 Minn. 373, 212 N. W. 602, 56 A. L. R. 1, and cases cited. And see 56 A. L. R. 13.

Judgment affirmed.

WILSON, C. J. (concurring).

The argument is that the representations were not made concerning the operation in humid weather; that the representations as made were true; that the parties believed them to be true; if the representations were not literally true they were innocently made in that it was assumed that the device would serve the purposes of the ordinary ice refrigerator under all conditions of warm weather. Experience up to that time convinced the parties that the refrigerator was an unqualified success.

It seems to me that, since they put the device upon the market, their representations and conduct must be construed as representation to the effect that it was suitable for the purposes for which it was sold. They assumed an attitude of knowing whereof they spoke, and their representation that it would function in the warmest kind of weather must be construed as including humid weather. It was the equivalent of saying that it would function perfectly in all kinds of warm weather. It was apparently so understood and they must have so intended. The fact that it develops that they did not know as much as they assumed to know is no defense even though they acted honestly. Their conduct was just as detrimental to plaintiff as if it had been a wilful falsehood. Bad motive is not an essential element of fraud. The representation was made without knowing whether it was true or false. Honest belief is no defense. It is a fraud for one to assert the existence of a fact concerning which he knows nothing. It may be that liability in this

case could also be successfully asserted on the ground of mutual mistake of fact.